The next case on this morning's docket is the case of People of the State of Illinois v. Mark Kuni. And we have Ms. Michele Giusto for the account, and Mr. Patrick Bailey for the appellate. And you may begin when you are prepared to do so. May it please the court, and Mr. Bailey. A man walks past or drives past a public intersection in an area known for high drug trafficking. 45 minutes later, drugs are found where he had passed. Obviously he's the one who dropped the drugs, right? No. That's what happened in this case. The police were sitting there in this area known for high drug trafficking. They were there because it was known for high drug trafficking. They were looking for a deal. This van came up. It caught their attention because it lingered at a stop sign for a little longer than the police officers thought it should. The police started following the van. At the intersection of Snow White Terrace and Cinderella Drive, the van slowed down and the passenger door opened maybe 5 to 8 inches. The officers thought that perhaps the passenger in the van was going to jump out. They didn't see anything come out of the van, anything, nothing was dropped. The van drove down a dead end road, kept going, and eventually turned over in a ditch. Wasn't the van being chased at that time by a car with lights flashing? Yes. Yes, that's correct. So not only drove down, it sped down the road and went through a yard, didn't it? I'm not clear exactly what, but yeah, they went over a culvert and ended up in a field. Was it airborne, did it say, or something like that? I'm not positive, but the van was found lying on its side. And it landed on, it ended up on its side at the end. Correct. And when the police officers got there, Mr. Cooney was standing by the van, but Jackie Forgey, who had been driving the van, was nowhere to be found. 45 minutes after they found the van, the officers went back to Snow White Terrace and Cinderella Drive and found a fairly large bag, like a Walmart bag, with methamphetamine in it. Because this van had passed that way, they assumed that the meth had come from that particular van. And there was smaller packets of methamphetamine, there was some tubing, some hypodermic syringes found in the van. But this package that was found in the road, there was no connection to the van. There was also some hypodermic needles found in the vicinity, I think, of where the van ended up. Right, in the field where, or the field of the yard where the van ended up. The jury convicted the defendant of the possession of the bag of meth that was found in the road. Now at sentencing, Jackie Forgey comes along and testifies that he'd been driving the van, that unbeknownst to the defendant, he had some meth up his sleeve, this bag of meth up his sleeve. When he realized that the police officers were behind him, he pulls the bag out and hands it to Cooney and says, please throw this out the van. Cooney said no, he gave it back, it went back and forth a little bit, and finally the bag was, Cooney put the bag outside. When the van overturned again, Forgey ran away, Mr. Cooney did. The first question is, why wasn't Cooney called at trial? His testimony obviously would have been helpful to the defendant. There was no trial strategy that could justify the failure to call Forgey. Would not his testimony have been inconsistent with the trial strategy? It was inconsistent with the defense that was presented, but there's nothing wrong with presenting inconsistent defenses. The defendant is perfectly allowed to say, I didn't do it. The state can't prove that I did it, but if I did it, here's the rest of the defense. So yes, his first defense was that the meth didn't belong to him. But if it did belong to him, doesn't that maybe affect his credibility somewhere? Perhaps, but it's perfectly... It's perfectly possible, but the question is whether or not it might damage his credibility. It might, but I think that it gives the jury another way to look at it. I don't think any reasonable attorney would have failed to call Forgey. There was no reason not to. It's true that Forgey has some credibility problems, he had a lengthy criminal history. Wouldn't that have been a good enough reason not to call him? No, because his testimony was... Let's just say it happened the way before he said it did. Defendant's possession of the meth at that time, that was not a criminal offense. If I give you a bag and I say, would you carry this across the country, across the international border for me, and you're arrested with drugs, it's really my problem, not yours. You're not possessing them with criminal intent. Really? Well, okay, let's make it a little easier. If I give you a bag and say, would you throw this away? And you do, you don't have the drugs with that criminal intent. If you only have them for a second, it's not a criminal intent. He didn't know the drugs were in the car, he didn't know this big bag was in the car. Yeah, I want to stop you because the one thing he didn't talk about circumstantially is apparently the police officers said there was a very strong odor of antivirus ammonia emanating from the van, which led them to believe that maybe they were cooking meth. Contemporaneous with being stopped. Wouldn't that be a little inconsistent with the story that he didn't know there was any meth in the van and he was just asked to dispose of this meth that coincidentally that his cousin had? I'm not disputing that Forgey had all this stuff in his van. Maybe Defendant knew that Forgey had a little bit of meth, he had some antivirus, he was going to make meth somewhere down the road. I don't think, if I recall correctly, it wasn't a meth lab in progress, because I think it would have blown up when the van turned over. Maybe he knew that Forgey had a history of doing this, he had a history of all this criminal activity, but he didn't know that Forgey had what was like 100 grams or more. He didn't know there was a felony amount of meth in the car, or in the van. There was simply no reason to not call Forgey. One question. Were any of his priors drug-related? Mr. Coonies? Yes. I don't believe so. Home invasion or something like that? I think burglary, but I don't believe he had any prior drug convictions. How about Mr. Froggy? Forgey, yes. He did. I do believe he had prior drug convictions. And they were criminal, I mean they were drug-related? Yes, I do believe so. Okay. Oh, another thing I wanted to say was, we're back to the original defense of I didn't do it. The police saw the van, they were chasing the van, it was going like 40 miles an hour in this residential neighborhood. The door opened, they thought that the passenger was going to jump out of the van. Never once did the officers say they saw a bag of anything come out of the van at that point. And this was not a small, a tiny foil pack. This was, like I said, a bag, like a Wal-Mart sized bag. And I encourage your honors to look at the copies of photographs that I've attached to the back of my brief to show you just how big it really was. But weren't there like a couple of foil packs of completed product in addition to the larger bag that you're talking about that was, I guess, incomplete? That's possible. Well, I mean, isn't that what the facts show? Yes, but that would just be a small amount. We're talking, my concern is this huge amount of money that makes it the felony that the defendant was convicted of. If he had put it there, or if he had dropped it there, certainly the officers would have noticed. Yes, it was after midnight, but it was this large white bag. They had their lights on. It was large enough to have been noticed. And also, it was 45 minutes after the van passed. Okay. But they didn't just notice a large bag of meth product somewhere and try to pin it on them. It was exactly the route that they had taken and exactly where they had seen a door open. In a high drug trafficking area. They saw the door open, but they never said they saw anything come out of the van. They also didn't see any hypodermic needle be thrown out of the van, which was later discovered, I guess, in the tracks where the van had gone when it was going off the road. That's correct. But there's a difference between, first of all, a difference between a little hypodermic needle and a large white bag. But presumably, it came out of the van as well because it was of the exact same, it was in the route. I'm just talking about circumstances and how you make inferences. You kind of add them all together. The other thing, though, was that in the field where the van, and I'm not sure how far away these were from the van, but the officers didn't actually, they actually lost sight of the van for a while. So that's another reason why they wouldn't have seen the hypodermic needles if they came out of the van. The fact that it was 45 minutes later in a high drug trafficking area is what really bothers me. It was, not that somebody casually placed it there, not that somebody deliberately framed the defendant, but it's so highly possible that somebody else had lost that bag of drugs. One question, was this on a dead-end street where the accident happened? Did not go through a yard because it was a dead-end street? I got confused. Where the drugs were found? No, no, where the van went. It was on a dead-end street. So then were the drugs thrown out past the intersection on the dead-end street? Or were they thrown out before the intersection on the dead-end street? Before. They were at this intersection. Okay. So the car, the vehicle, other vehicles could have turned left or right? Exactly. Okay. Exactly. Yeah. You'll have the opportunity. Yes, thank you. Thank you. Thank you, Mr. Daly. Good morning. Good morning. Starting first, I guess, with Mr. Ford. I was waiting for someone to say, well, you can present an incompatible defense. I sort of anticipated that coming up at some point because, true, the fact you can doesn't mean you have to or you should. This is a circumstantial evidence case. We have to look at this from the perspective of a defense counsel, what they could reasonably perceive, and a lot of deference is given to defense counsel to evaluate a defense strategy and say, okay, no one's actually put these drugs in my client's hands. So for the state to prove it, beyond a reasonable doubt, the highest burden there is, they're going to have to tie together the circumstantial evidence. Yes, they did so, but it's certainly not the easiest case in the world, perhaps, for the state to prove. Now, it appears that Fordy did talk to defense counsel before he indicated that he knew what he had to say. So presumably that defense counsel was aware of what Fordy's testimony would have been. He also was aware of his prior criminal history, which included, I don't know if it included drug offenses, Your Honors. If that's the case, I agree. It does include, however, probably more relevantly, obstructive justice. So that's something the jury's going to be weighing heavily on, I would suspect, when you hear his prior criminal history, since that goes right to his truthfulness. The, by putting Fordy, looking at this from counsel's perspective, by putting Fordy under witness, and having him testify to what he had testified to in sentencing hearing, would have essentially obliterated the argument that the state can't put these drugs in my client's hands. Can't even put them in the car. I mean, that's really the whole defense strategy, because now you've got Ford saying, oh, I had it, I handed it to him, he didn't want to get rid of it. Eventually he held it. He did have it in his possession, and apparently before he's direction, he tossed it from the vehicle. Now, we can argue back and forth, I suppose, about whether that is or is not possession. But defense counsel doesn't have to engage in that sort of semantical debate with himself. He has to ask himself, what's a jury going to think? When I've got a case where the state can't put these drugs in my guy's hand, why would I want to put someone on the witness stand that's going to get rid of that defense? And to say that we can present these as incompatible defenses is unrealistic. No competent defense counsel is going to want to confuse a jury by saying, the state didn't put me in his hands. Oh, by the way, my witness said he did. It doesn't make any sense. So, it is not, it was not ineffective for counsel to say, look at Fordy and say, I really got to choose between you or this. And I think I'd rather go with forcing the state to meet their burden of proof on something that they can't put the drugs in this guy's actual possession, visually, and only by circumstantial evidence, than putting on this 14-time convicted felon who committed a burglary of his little cousin, and they were cousins, and he acknowledges the drugs are in the car, and he handed him the drugs, and that the defendant possessed the drugs and tossed them from the vehicle, which, whether he did so in his cousin's direction or not, he was actually helping him to get rid of the drugs. How's a jury going to perceive that? Will they even believe that? And will he be safe? He's just protecting him. So, we know the drugs are in the car. We know the defendant had the drugs. Just as plausible that he was getting rid of them, because he didn't want to get caught because he had them. They were in the car together. Was Fordy in prison at the time? He was. He had actually pled guilty on this case to possession and to, I think, manufacture or something along those lines. That's a 12-year sentence. So, at that point, he had really nothing to lose, I suppose, in that regard. I do want to make one parenthetical comment, because the question might come up, well, why would counsel put Fordy on that sentence? Well, I mean, we're past the conviction at this point. So, it's not really even a question of choosing competing defense strategies. Of course, the state, the means were improved. Now you throw everything out there and try to get the courts to say, all right, well, my defense strategy didn't work. So, here we've got Fordy. Fordy's the one who really did it, Judge. Be nice to my guy. And it's what counsel has to do. It doesn't want to be accused later of not putting, you know, mitigating elements. So, it's perfectly reasonable to use Fordy in sentencing and not use him in trial. As far as the evidence itself is concerned, I may have some, perhaps my notes are incorrect. I had the hypodermic needles in the passenger compartment of the van after it had been turned over, which they had tied to the van. The ones that they actually found in the van. In the van. Were on the passenger. That's what my notes say. If I'm wrong, I apologize. I've been known to be wrong. And then how close to where the van ended up was the one or two that they found? I don't, I don't really know. The only thing that I, I flipped through my notes again really, really quickly, and the only thing I saw was further down the roadway. So, it wasn't, it didn't appear that it was actually right by where the drugs were found on the street. So, it didn't look like it fell out when the van flipped over. So, you're saying. I'm, I'm, I'm afraid to say more than that. Possibly. I mean, I think the impression that I got, they weren't found at the scene where the van rolled over, but they were not found where. Another one. Am I not correct? The van was on its, laying on its passenger side, wasn't it? Yes. So, anything in the van would fall on the passenger side. Right. In fact, Forby's I.D. is law. Passenger side. Yes. So, so, sure. I mean, it's, it's reasonable. Gravity. I think is what you mean. It was all over there, including the defendant himself. Forby had one. He was the lucky one. So, well, not too lucky, I guess. I can't quite imagine. The, well, I think a principal emphasis the defendant is making here is that, well, this is a high crime area. That's true. Anodyne's not an extremely, like, like, Cinderella. It doesn't seem to relieve one from a drug, being a drug area. But it seems that what's not being mentioned is the fact that this occurred during the very early morning hours. So, it's not like at one in the afternoon where people are going to be coming by and tossing drugs on the street floor. Why would anyone want to toss that amount of drug in the street and leave it there and nobody else picks it up in the interim? It doesn't make any sense. But, you know, the state's not required to disprove every, every, every hypothesis in order to meet the circumstantial evidence. What we have here is a late night, early morning incident. So, there's presumably not a lot of traffic out there. There's not a lot of foot traffic probably walking around at one in the morning or whenever it is that the police have gotten back to that area. The drugs were found where the officers had observed a door, a car. The car had slowed down. The door had opened up. The officer testified that his experience meant one of two things. Either someone's about to get out of the car and run or they're dumping something out of the side of the car. So, it's fairly good circumstantial evidence in this case when all those factors are taken together. They were, I liken this to that U.S. versus Baker case. Yes, a federal case where an individual ran from the police, was apprehended, and then when the police traced back the path that he took, they found drugs along the path of the defendant. In the federal court it says that that was sufficient circumstantial evidence in relation to the fact that the defendant was guilty of possession. It's really sort of the same thing. You've got flight from the police here. You've got the door opening in the proximity very close to where those drugs were found. And you do have evidence in the vehicle itself of meth manufacture and meth usage and drug usage, drug paraphernalia. I think that when you look at the totality of the circumstantial evidence, you know, a rational trial could find that the state had proven possession. And this court's function, of course, is not to retry the defendant. It's to look at the evidence in the light most favorable to the state. So, to say that, well, it could have been this or it could have been that, is looking at it in the light most favorable to the state. What's the state's evidence? And what rational, reasonable inferences can be drawn from that evidence that the state presented? Of course, you've got what looked like someone getting rid of the drugs, and lo and behold, the drugs are there. And it's obvious that drugs were in that vehicle or that something was going on in that vehicle that was drug-related. So that is just really probably in its basest form the state's evidence in this case. And while I think defense counsel chose the right strategy because circumstantial evidence is circumstantial evidence and the jury would probably much be happier to see the baggie in their hand or their pocket or something, it's still good evidence and that strategy didn't work. So it wasn't unreasonable. And the state's evidence was more than ample for the rational trial to find the guilty. Any other questions? Thank you for your time. We have a new rebuttal. First of all, as Justice Welk pointed out, the van was on its side. So we don't know where these needles originally were. We don't know where the packets of drugs were. They could have been well hidden in the van, but the van obviously flipped on its side and everything. Wait, excuse me. The drugs. You're not talking about the ones that were found? I'm sorry. The needles and whatever else was found in the van. Yes. Also, the state talked about Baker. Baker's actually distinguishable because in Baker there was only one person. He was fleeing on foot, throwing things out as he was walking, and at one point he was caught trying to remove something from his pants. Here, there were two people in the van. Forgey's the one that ran. Mr. Cooney stayed there. First of all, to me, that's an indication that he wasn't guilty because why would he stay there? Obviously, Forgey got away from the police. In Baker, the drugs were found. There were more drugs found where the person was arrested. Here, there was not a large amount of them. And once again, I encourage our audience to take a look at the pictures of the bag that was thrown from the car, allegedly, and there's no way that the police would have been arrested. Do we know what observation point the police had when the van was passing through the intersection? Were they at a perpendicular side, and which side that was? That's not in the record. Not in the record at all? That I recall, and I can't say. Okay, we'll bring that up. Okay. Thank you. Thank you both for your arguments and briefs, and we'll take them at our advisement. And we're going to take a brief break.